MICHAEL N. HUFF, ESQUIRE        ATTORNEY FOR DEFENDANT
Member of the PA, NJ and NY Bars
1333 Race Street
Philadelphia, PA 19107
(215) 567-2120
michael.huff.esq@gmail.com

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No.: 20-413-1-EGS |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER LAMONT STIMPSON, JR. | : | |

### MOTION AND MEMORANDUM OF LAW
### TO SUPPRESS PHYSICAL EVIDENCE

**TO THE HONORABLE EDWARD G. SMITH, U.S.D.C.J.:**

The Defendant, by and through his counsel, MICHAEL N. HUFF, ESQUIRE, respectfully requests that the Court grant this Motion to Suppress Evidence and in support thereof, respectfully represents the following:

### STATEMENT OF FACTS

On October 29, 2020, at 11:19 a.m., Detective Graeme Quinn of the Ephrata Police Department was dispatched to 685 Wollups Hill Road, West Cocalico Township, Stevens, Pennsylvania for a report of a robbery. Detective Quinn arrived at 11:30 a.m. and spoke with Benuel Stoltzfus. Mr. Stoltzfus indicated that he was recently contacted by Christopher Stimpson who resided in North Carolina and was interested in purchasing five (5) French Bull Dogs. Mr. Stoltzfus informed Detective Quinn that he sells French Bull Dogs from his website "Lancaster Puppies" also known as "Mountain Top Kennels." According to Mr. Stoltzfus, Mr. Stimpson was a broker for French Bull Dogs and provided references. Mr. Stoltzfus and Mr.

1

Stimpson exchanged phone calls before they agreed upon a price of $23,500 for five dogs. Mr. Stimpson's telephone number was identified as 336-491-4081.

On October 29, 2020, at 10:00 a.m., Mr. Stimpson and his co-defendant, Wilbert Curtis Trey Artis, III picked Mr. Stoltzfus up in their gray Chevrolet Silverado at his employer Sturdy Built Manufacturing. The three then drove to Mr. Stoltzfus' residence. Mr. Stoltzfus walked to the kennel behind his house and retrieved the puppies and carried them in a laundry basket to his house. Mr. Stimpson and Mr. Artis entered the den and examined the puppies. Mr. Stoltzfus' wife, Maryanne, and their daughter, MaLinda were both home and participated in the transaction.

While in the house, Mr. Stimpson took pictures and recorded videos of the puppies and uploaded them on the internet. According to Mr. Stoltzfus, Mr. Artis went to the truck to get the money and brought it back into the house. Mr. Stoltzfus, Mr. Stimpson and Mr. Artis proceeded to the kitchen where Mr. Stoltzfus began counting the money at the kitchen table. Mr. Artis then returned to the den, picked up the basket of puppies and took them to the truck. Mr. Stimpson stayed behind and assisted Mr. Stoltzfus and his daughter MaLinda with counting the money. The money was placed in $1,000 stacks of $20 bills. According to Mr. Stoltzfus, they counted out 15 separate stacks ($15,000) on the kitchen table when Mr. Stimpson allegedly began scooping up the money and ran toward the door.

Mr. Stoltzfus told the police that he grabbed Mr. Stimpson around the waist from behind and the two fell on the floor. Mr. Stimpson then supposedly pulled out a black handgun from his jacket, held it high over his head and pointed it toward Mr. Stoltzfus in a menacing fashion. Mr. Stimpson then purportedly demanded that Mr. Stoltzfus, Maryann and MaLinda pick up the money and place it into a plastic ice cream pail located in the kitchen. Mr. Stimpson then ran out

of the house, got into the truck and drove away with Mr. Artis. Mr. Stoltzfus got the truck's license plate registration and provided it to police. Upon further police investigation, the Chevy Silverado was registered to Enterprise Rental Car in North Carolina and leased to Tyquann Brim (Mr. Stimpson's brother) on October 15, 2020. Ephrata Police Officer Andrew M. Orwig arrived at the scene at 1:05 p.m. to assist Sergeant Eric M. Schmitt with processing the crime scene and collecting evidence. Photographs and fingerprints were taken and a total of $4,140.00 was recovered from the kitchen table and floor.

On November 2, 2020, Mr. Stoltzfus contacted FBI Agent Kenneth E. Lockhart, Jr. and informed him that a person named "Donta" (aka Donte Knox) contacted him after noticing a video on Instagram that he believed depicted the stolen puppies. Agent Lockhart spoke with Donta who said the video was on an Instagram Account known as "Elite Body Frenchies." **Exhibit 8** at ¶ 19, p. 7 (1/22/21). Donte emailed Agent Lockhart the video link as well as a link to "Elite Body Kennels." On November 4, 2020, Mr. Stoltzfus identified the photographs and video as the people who he alleges stole the puppies. Agent Lockhart located the following Facebook and Instagram profiles for Christopher Stimpson:

   (1) Facebook Profile name "Elite Body Kennels" Facebook URL;

   (2) Facebook Profile name "Elite Frenchies;"

   (3) Facebook Profile Name "Chris Stimpson" Facebook URL;

   (4) Facebook Profile Name "Maine Brim" user ID 100011014774891;

   (5) Instagram Profile name "elitebodykennels;"

   (6) Instagram Profile name "elite.bodyy.frenchiesss;" and

   (7) Instagram Profile name "youngbossstimp."

On or about December 8, 2020, Christopher Stimpson was arrested in Greensboro, North Carolina pursuant to an arrest warrant issued in the EDPA. Stimpson and Artis both gave statements to the FBI. Mr. Stimpson was interviewed on December 8, 2020 at 1106 Maple Street, Greensboro, North Carolina by Task Force Officer Nicholas Combs and FBI SA Keith D. Springs, Jr. Mr. Stimpson was purportedly read his rights from a FD-395 form and consented to being interviewed without an attorney. Mr. Stimpson said that the puppies were found using a Lancaster Puppies website. He said that he spoke with Mr. Stoltzfus four or five times before they agreed on a price. The exchange was originally supposed to take place on October 24, 2020 but was postponed by Mr. Stoltzfus until four days later. Mr. Stimpson was asked to pick up Mr. Stoltzfus at his job which he thought was weird. After arriving at Mr. Stoltzfus' residence, Mr. Stimpson asked to see the puppies' parents but Mr. Stoltzfus refused. Mr. Stimpson waited in his vehicle for approximately 15 minutes while Mr. Stoltzfus retrieved the puppies. While in the house, Mr. Stimpson told law enforcement that Mr. Stoltzfus began to act weirder. While Mr. Stoltzfus was counting the money, he began speaking in a different language to his wife who rushed out of the room. Mr. Stimpson then panicked and tried to flee the residence. Mr. Stoltzfus tried to stop him but was unsuccessful. Mr. Stimpson said that he was not armed during the incident and did not rob Mr. Stoltzfus. Mr. Stimpson also advised that he was on probation and was not allowed to leave North Carolina. Law enforcement asked Mr. Stimpson to call his friend who had his cell phone and bring it to the police station. Mr. Stimpson then used his cell phone to make arrangements for the puppies to be brought to 1801 Stanley Road in Greensboro where FBI would take possession of the dogs. The cell phone was then seized by the FBI.

On December 8, 2020, Special Agents and Task Force Officers from the Greensboro FBI seized four French Bulldog puppies from Diamalee Mercedes Santago from Charlotte, North Carolina. Ms. Santago had two of the puppies. The third one was in Greensboro, North Carolina and the fourth was in Raleigh, North Carolina. On December 11, 2020, all of the puppies were returned to Mr. Stoltzfus.

## PROCEDURAL HISTORY

On November 17, 2020, Christopher Stimpson and Wilbert Artis were indicted in the Eastern District of Pennsylvania. **Count One** charges both defendants with Robbery which Interferes with Interstate Commerce in violation of 18 U.S.C. § 1951(a) and 2; **Count Two** charges both defendants with Unlawfully Transporting Stolen Goods in Interstate Commerce in violation of 18 U.S.C. § 2314 and 2. Trial is scheduled for March 21, 2022.

**POINT I.    MOTION TO SUPPRESS EVIDENCE OBTAINED FROM SEARCH AND SEIZURE WARRANTS**

The Fourth Amendment lays out four requirements of a valid warrant. The warrant must: (1) be based on probable cause; (2) be supported by a sworn affidavit; (3) describe particularly the place of the search; and (4) describe particularly the persons or things to be seized. *Groh v. Ramirez*, 540 U.S. 551, 557 (2004). The Fourth Amendment requires that a search warrant be supported by probable cause, and "[e]vidence seized pursuant to a search warrant that is not so supported may be suppressed." *U.S. v. Rivera*, 524 Fed. Appx. 821, 825 (3d Cir. 2013) (citation omitted). In evaluating a search warrant application, "the magistrate [judge] must 'make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *U.S v. Stearns*, 597 F.3d 540, 554 (3d Cir. 2010) (citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983)).

In the instant case, the FBI executed the following Search and Seizure Warrants:

| Exhibits | Attachment A - Property to be Searched | Case Number | Date |
|---|---|---|---|
| 1. | Facebook Account for Elite-Body-Kennels | 21-mj-120-1 | 1/22/21 |
| 2. | Facebook Account for Elite-Frenchies | 21-mj-120-2 | 1/22/21 |
| 3. | Facebook Account for chris.stimpson.96 | 21-mj-120-3 | 1/22/21 |
| 4. | Facebook User ID/URL: 100011014774891 | 21-mj-120-4 | 1/22/21 |
| 5. | Instagram Account for elitebodykennels | 21-mj-120-5 | 1/22/21 |
| 6. | Instagram Account for elite.bodyy.frenchiesss | 21-mj-120-6 | 1/22/21 |
| 7. | Instagram Account for youngbossstimp | 21-mj-120-7 | 1/22/21 |

A. **THE SEARCH WARRANT IS OVERBROAD AND FAILS TO PARTICULARIZE THE THINGS TO BE SEIZED**

A single Affidavit in Support of an Application for a Search Warrant was used for each search warrant. **Exhibit 8**. Attachment B to the Affidavit, "Particular Things to be Seized" includes the following Facebook/Instagram information:

a. All contact and personal identifying information, including: full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers;

b. All activity logs for the account and all other documents showing the user's posts and other Facebook activities from October 15, 2020, through the signature date of this warrant;

c. All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

d. All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall/Timeline postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

e. All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware

    model, operating system version, unique device identifiers, mobile network information, and user agent string;

f. All other records and contents of communications and messages made or received by the user from October 15, 2020, through the signature date of this warrant; including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

g. All "check ins" and other location information;

h. All IP logs, including all records of the IP addresses that logged into the account;

i. All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

j. All information about the Facebook pages that the account is or was a "fan" of;

k. All past and present lists of friends created by the account;

l. All records of Facebook searches performed by the account from October 15, 2020, through the signature date of this warrant;

m. All information about the user's access and use of Facebook Marketplace;

n. The types of service utilized by the user;

o. The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

p. All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account; and

q. All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

  In the instant matter, the "particularized things to be seized" section lists 17 separate items. Only three (3) of those items limit the time of the search from October 15, 2020 through the signature date of the warrant. The other entire 14 items request "all" items without any time constrains. The Defendant argues that the lack of time constraints fails the particularized

requirement under the Fourth Amendment.  Thus, the physical evidence obtained from the execution of the search warrants must be suppressed.

### B.      THE SEARCH WARRANT FAILS TO STATE PROBABLE CAUSE

In the Affidavit of Probable Cause (**Exhibit 8**), Agent Lockhart reasoned:

> Common sense and common knowledge dictate that those who engage in criminal conduct, attempt to conceal their conduct from the police. People involved in the commission of crimes often utilize cell phones to maintain contact with criminal associates to communicate their whereabouts and illegal activities.  Contact can be made through text messages, email, and/or social media/networking sites. This investigation has revealed that at least one video of the stolen French Bulldog puppies has been viewed on Instagram.  There is probable cause to believe that if Stimpson uploaded a video to one social media site, he uploaded additional pictures and videos to other sites used by him. The investigation also revealed that Stimpson and Artis may have intended to subsequently sell the stolen puppies. As a result I believe that probable cause exits to believe the Facebook and Instagram may house information, consistent with this warrant, that indicate that intention as well as possession of the stolen puppies. Additionally, because Tyquann Brim rented the vehicle used to facilitate the robbery, there is probable cause to believe that Brim and Stimpson communicated through social media during the rental period for the vehicle, which necessarily includes the time of the robbery. Such communications are likely to include information concerning events that occurred during the trip to Pennsylvania, and may even discuss criminal activity as it relates to the robbery. The data retrieved from Facebook and Instagram will assist the investigation by corroborating the timeline of events surrounding the robbery, identifying the culpable parties involved, and assist investigators in identifying and locating any other relevant evidence of the charged crimes.

*Affidavit in Support of an Application for A Search Warrant*, No. 21-mj-j.-120, ¶ 28, p. 10-11 (1/22/21)

In the case at bar, the FBI received information from Mr. Stoltzfus that his business acquaintance, Donte Knox, saw the purportedly stolen dogs on an Instagram Account known as "Elite Body Frenchies" and "Elite Body Kennels."  **Exhibit 8** at ¶ 19, p. 7 (1/22/21).  No other information was provided that evidence of criminal activity would be found on the other five (5) Facebook and Instagram Accounts that were the subject of the Search and Seizure Warrants. The Affidavit of Probable Cause therefore fails to establish probable cause to search these

additional social media platforms.  In other words, the Affidavit does not raise a "fair probability" or "substantial chance" that evidence relevant to the charges against Mr. Stimpson would be found in each of these five (5) places to be searched.  See *U.S. v. Morton*, 984 F.3d 432 (5th Cir. 2021).  As a result, the evidence obtained from these 6 searches must be suppressed.

## CONCLUSION

For the foregoing reasons and for ones that may become apparent after a hearing, it is respectfully requested that physical evidence obtained from the search warrants be suppress.

Respectfully submitted,

Date:  11/19/2021

MICHAEL N. HUFF, ESQUIRE
Member of the PA, NJ and NY Bars
1333 Race Street
Philadelphia, PA 19107
(215) 567-2120
michael.huff.esq@gmail.com